UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSE GUADALUPE PRIETO,
ADAN JUAREZ, and EDUARDO
ROMERO,

      Plaintiffs,

v.                                                                                          Case No. 1:08-CV-706

KALAMAZOO METAL RECYCLERS,                                        HON. GORDON J. QUIST
INC., PATRICK J. FARRELL, SR.,
PATRICK J. FARRELL, JR., WILLIAM
J. FARRELL, GORDON HENDERSON, and
DARRELL PHILLIPS, jointly and severally,

      Defendants.
_____/


## OPINION

The Court has before it Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs allege two claims arising from an alleged assault and beating by Defendants on August 14, 2006. First, Plaintiffs allege that Defendants conspired to deprive them of their constitutional rights, in violation of 42 U.S.C. § 1985(3). Second, they allege a claim for violation of Michigan's ethnic intimidation statute, M.C.L. § 750.147b(1). Defendants contend that Plaintiffs fail to state a claim under § 1985(3). The Court does not deem oral argument to be necessary for resolution of the motions.

For the reasons set forth below, the Court will grant Defendants' motions and dismiss Plaintiffs' state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**Facts**

The following facts are taken from Plaintiffs' complaint and accepted as true for purposes of the instant motion.[1] Defendant Kalamazoo Metal Recyclers Inc. ("KMR") operates a scrap metal recycling business in Kalamazoo, Michigan. Defendant Patrick J. Farrell Sr. is the owner and president of KMR, and Defendants Patrick J. Farrell Jr., William J. Farrell, Gordon G. Henderson, and Darrell Phillips are employees of KMR.

During the months prior to August 14, 2006, KMR had been the victim of several thefts of scrap metal from its scrap yard. At approximately 1:00 a.m. on August 14, 2006, another theft occurred, and the police responded to investigate. Later that morning, at about 5:00 a.m., Defendant Patrick Farrell Sr. arrived at KMR to begin his workday. He walked the perimeter of the scrap yard and discovered several aluminum manifold blocks that had apparently been taken from the scrap yard and thrown down an embankment onto adjoining property owned by the City of Kalamazoo as part of the Mayors Riverfront Park. Concluding that the thieves would return to retrieve the manifold blocks, Patrick Farrell Sr. and the other Defendants hid in the bushes to catch the perpetrators.

At approximately 9:00 a.m., Defendants observed four Hispanic men walking up the trail in the park toward the metal blocks. As the men drew near, Defendants sprang from the bushes and apprehended two of them, the other two apparently having escaped. At that point, Defendants bound

---

[1] In his brief in support of his separately-filed motion, Defendant Patrick J. Farrell, Sr. sets forth a counter-statement of facts that goes beyond the allegations of the complaint and, in fact, relies upon purported testimony from a preliminary examination in a prior state criminal case. It is well established that a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is limited to the factual allegations in the complaint. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996); *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 172 n.2 (3d Cir. 2006); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). In ruling on a Rule 12(b)(6) motion, a court generally may not consider any facts outside the complaint and exhibits attached thereto. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Accordingly, the Court will disregard Patrick J. Farrell, Sr.'s counter-statement of facts in ruling on the instant motions, at least to the extent that it relies upon facts not alleged in the complaint.

the men with duct tape and beat and threatened them, while using racial slurs. During the beating, Defendants forced the two men to use their cell phones to summon others to the park. The men called Plaintiffs, who were either relatives or friends of the men. When Plaintiffs arrived at the park, Defendants captured them, bound and beat them, and verbally assaulted them with racial slurs. Thereafter, Defendants called the police. Before the police arrived, however, Defendants threatened that if Plaintiffs told anything to the police, Defendants would kill their families.

Plaintiffs allege that "[a]t all times relevant hereto, the individual Defendants were acting in the capacity of employees of [KMR]; and the individuals were authorized, if not instructed, by the corporate owner to engage in this shocking conduct." (Compl. ¶ 25.)

## **Motion Standard**

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed. 1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)).

"Ordinarily, when the omission of a critical allegation in a complaint is highlighted by a defendant's motion to dismiss, the appropriate method for adding new factual allegations is to request leave to amend the complaint in conjunction with responding to the motion." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 521 (6th Cir. 2008). Pursuant to Rule 15(a)(1)(A), a party may amend its pleading once as a matter of course "before being served with a responsive pleading." Thus, when a responsive pleading has not been filed, a plaintiff may file an amended complaint without leave of court. *Winget v JP Morgan Chase Bank, N.A.*, 537 F. 3d 565, 574 (6th Cir. 2008).[2]

## Discussion

### *Federal Claim Under 42 U.S.C. § 1985(3)*

Defendants move for dismissal of the claim under 42 U.S.C. § 1985(3) upon three grounds. First, they argue that the intracorporate conspiracy doctrine precludes Plaintiffs from establishing a conspiracy under the facts alleged in the complaint. Second, Defendants argue that Plaintiffs' allegations show only that Defendants were motivated by their desire to catch the thieves, not by any racial or other class-based animus. Finally, Defendants argue that the claim fails because Plaintiffs allege only a private conspiracy (without state involvement) based upon rights that may only be enforced against the government.

In their response, Plaintiffs acknowledge that Defendants were correct on at least one of their arguments for dismissal. However, Plaintiffs have submitted an amended complaint, which they contend cures all of the defects that Defendants identified in their motions and requires that

---

[2] A motion to dismiss is not considered a "responsive pleading" for purposes of Rule 15(a). *Winget*, 537 F.3d at 574.

4

Defendants' motions be denied.[3]  Defendants contend in their reply brief that, in spite of the amendment, Plaintiffs still fail to state a claim under § 1985(3).  Because Plaintiffs may file their amended complaint without leave, the Court will: (1) instruct the Clerk to file Plaintiffs' amended complaint; (2) treat Defendants' motions as directed to the amended complaint; and (3) determine whether the amended pleading states a claim.

Section 1985(3) imposes civil liability upon the participants in a conspiracy intended to deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  To state a claim under § 1985(3), a plaintiff must allege:  "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct 3352, 3356 (1983)).

---

[3]Plaintiffs also point out in their response that Defendants failed to comply with Local Civil Rule 7.1(d), which requires "the moving party [to] ascertain whether the motion will be opposed . . . [and to] affirmatively state the efforts of the moving party to comply with the [concurrence] obligation." W.D. Mich. LCivR 7.1(d).  Plaintiffs contend that had Defendants sought concurrence, Plaintiff would have voluntarily amended the complaint, which may have avoided the necessity of the instant motions.  Plaintiffs request that the Court thus award whatever sanction it deems appropriate against Defendants for having caused Plaintiffs to incur unnecessary time and expense responding to Defendants' motions.  While Local Rule 7.1(d) is usually most effective in reducing the need for discovery motions, the Court generally follows a policy of requiring the moving party to seek concurrence for dispositive motions, although such effort rarely results in concurrence by the opposing party. Although the Court did not require defense counsel to provide a separate statement certifying their efforts to comply in this case, it is nonetheless clear from Defendants' reply brief that the amended complaint would not have dissuaded Defendants from filing the instant motions.  Thus, the Court finds no need to impose any type of sanction based upon Defendants' technical violation.  Defendants' counsel are advised, however, that they should comply with Local Rule 7.1(d) in all motions, to the extent possible, in this and any other civil case in which they may appear in this district.

Defendants first contend that Plaintiffs' claim is barred by the intracorporate conspiracy doctrine recognized by the Sixth Circuit in § 1985(3) cases. The crux of the doctrine is that members of the same legal entity, for example, employees or agents of a corporation, generally cannot conspire with one another, so long as the alleged acts were within the scope of the defendants' employment or the entity's legitimate activity. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-510 (6th Cir. 1991). In *Hull*, the plaintiff, a school teacher, alleged a claim against a school board, the district superintendent, the district executive director, and a school supervisor, alleging a racially-motivated conspiracy among the defendants relating to the non-renewal of her contract. The court observed that the alleged conspiracy was among persons who were all employees of the school board and, therefore, there could be no conspiracy because there were not two separate persons to form a conspiracy. *See id.* at 510. Defendants contend that the intracorporate conspiracy doctrine bars the claim because the individual Defendants were all employees of KMR and were acting on behalf of KMR to stop the thefts of KMR's scrap metal.

Although Plaintiffs appear to concede that their original complaint failed to allege a conspiracy in light of the intracorporate conspiracy doctrine, they contend that their amended complaint cures this defect. First, they point out that the amended complaint omits KMR as a defendant. In addition, the Court notes that the amended complaint deletes the references in paragraphs 2 through 6 to the individual defendants being employees or agents of KMR, as well as the allegation in paragraph 25 that the individual defendants were acting as employees of KMR and were authorized by KMR to engage in the alleged conduct. Nonetheless, Plaintiffs still acknowledge in their brief that the individual defendants were, in fact, employees of KMR. Second, Plaintiffs contend that the "scope of employment" exception to the intracorporate conspiracy doctrine applies.

6

This exception "recognizes a distinction between collaborative acts done in pursuit or an employer's business and private acts done by persons who happen to work at the same place." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). As described by one court, this exception exists "when individuals pursue personal interests wholly separate and apart from the entity." *Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (internal quotation marks and citation omitted), *vacated and remanded on other grounds sub nom.*, *Orafan v. Rashid*, 249 F. App'x 217 (2d Cir. 2007).

Plaintiffs contend that the scope of employment exception applies because KMR is in the business of operating a scrap yard, not illegally detaining and torturing Hispanics. Plaintiffs further state that they were not thieves, and thus Defendants detained and tortured them because they were Hispanic, not because Defendants were seeking to catch thieves.

Plaintiffs' argument ignores their own allegation that the purpose of the alleged conspiracy was to catch thieves who were stealing KMR's property. (Am. Compl. ¶ 12 ("Upon [discovering the aluminum manifold blocks], Defendant Patrick Farrell Sr., along with Defendants Patrick Farrell Jr., William Farrell, Darrell Phillips, and Gordon Henderson, agreed to hide and wait in bushes on Mayors Riverfront Park in an effort to catch anyone who would come and attempt to retrieve the blocks of aluminum.").) Although Plaintiffs allege that Defendants used racial slurs toward the first two Hispanic men they detained and tortured and, later, toward Plaintiffs, nothing in the amended complaint suggests that the purpose of the alleged conspiracy was to torture Hispanics as well as catch thieves, or that Defendants would not have detained and tortured suspected thieves who were not Hispanic. Moreover, the fact that Plaintiffs were not actually thieves does not mean that Defendants could not have acted toward Plaintiffs for the purpose of catching thieves, because it is foreseeable that in acting on their plan Defendants might mistakenly detain persons who were not

the thieves, such as persons who coincidentally happened upon the aluminum blocks. Finally, the amended complaint merely alleges that Defendants forced the two Hispanic men to summon "other individuals, " not other Hispanic individuals. (Am. Compl. ¶ 19.) Thus, Defendants were seeking to advance KMR's business interests in catching persons who sought to steal its KMR's property.

Even accepting Plaintiffs' assertion that Defendants' actions were prompted by their personal animus toward Hispanics, the amended complaint nonetheless establishes that Defendants' primary motivation was to catch thieves, not to detain and torture Hispanics. In *Hartman v. Board of Trustees of Community College District No. 508, Cook County, Illinois*, 4 F.3d 465 (7th Cir. 1993), cited with approval by the Sixth Circuit in *Johnson*, *supra*, the plaintiff sought to avoid the intracorporate conspiracy doctrine by alleging that in acting on behalf of the corporation, the individual defendants acted with personal racial animus. The court observed that permitting a plaintiff to avoid the intracorporate conspiracy doctrine in § 1985(3) claims by alleging personal bias in carrying out actions within the scope of employment would eviscerate the doctrine because the statute requires proof of "invidiously discriminatory motivation" in the first instance. The court "conclude[d] that the [intracorporate conspiracy doctrine] is not avoided simply by showing that corporate employees were motivated in part by personal bias." *Id.* at 470. Here, the amended complaint shows that Defendants were acting to advance KMR's business interests by catching the persons who were stealing KMR's property. The fact that Defendants may have displayed a personal bias at some point is insufficient to defeat the doctrine.

Defendants' second argument for dismissal is that Plaintiffs' claim does not invoke the type of discriminatory animus prohibited by § 1985(3). In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790 (1971), the Supreme Court stated that § 1985(3) was not "intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101, 91 S. Ct. at 1798. It thus observed

8

that "[t]he constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law," could be avoided by requiring a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S. Ct. at 1798. The Court declined to decide whether invidious discrimination based upon something other than race would be actionable under § 1985(3). *See id.* at 102 n.9, 91 S. Ct. at 1798 n.9. Subsequently, in *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 103 S. Ct. 3352 (1983), the Court held that conspiracies motivated by economic or commercial animus are not within the purview of § 1985(3). *See id.* at 837-839, 103 S. Ct. at 3360-61. In particular, the Court held that § 1985(3) was not applicable to a conspiracy against workers who refused to join a union. *See id.* at 835, 103 S. Ct. at 3359.

As noted above, the conspiracy alleged in this case was directed at catching thieves of scrap metal from KMR. As such, it was motivated by economic animus, i.e., an attempt to stop losses resulting from thefts. Under *Scott*, Plaintiffs fail to allege an actionable § 1985(3) conspiracy. Although Plaintiffs contend that they were stopped, detained, and tortured because they were Hispanic, as set forth above, the object of the alleged conspiracy was "to catch *anyone* who would come and attempt to retrieve the blocks of aluminum." (Am. Compl. ¶ 12 (italics added).) Nothing in the amended complaint suggests that Defendants sought to target Hispanics or any other race in their efforts to catch the thieves. In fact, Plaintiffs' allegations show that Defendants had no idea that whoever came to retrieve the aluminum blocks would be Hispanic or any other particular race, nor did they know that Plaintiffs would be Hispanic, because it was the first two Hispanic men, not Defendants, who selected Plaintiffs to come to the scene.

Defendants' final ground for dismissal is that Plaintiffs have alleged a private conspiracy based upon a violation of Plaintiffs' Fourteenth Amendment rights, and for such a claim to proceed

9

under § 1985(3), it must allege involvement by the State. Defendants contend that Plaintiffs are asserting a Fourteenth Amendment violation based upon Plaintiffs' allegation that Defendants sought to deprive Plaintiffs "of their liberty and freedom and their constitutional rights of equal protection under the law, or equal privileges and immunities under the law." (Am. Compl. ¶ 29.) Similarly, Plaintiffs allege that they were deprived of their "freedom and other constitutionally protected rights as a citizen of the United States to be free of discrimination based on the [sic] their race," (*id.* ¶ 30), and that they suffered shock and horror as a result of the "deprivation of their constitutional rights [and] deprivation of their freedom and liberty." (*Id.* ¶ 31.)

The Supreme Court has held that § 1985(3) is a purely remedial rather than substantive statute. *See Scott*, 463 U.S. at 833, 103 S. Ct. at 3358 (stating that § 1985(3) "'provides no substantial rights itself' to the class conspired against") (quoting *Great Am. Fed. S. & L. Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S. Ct. 2345, 2349 (1979)). Instead, "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." *Id.* While it is true that the Court has recognized that § 1985(3) encompasses purely private conspiracies, *see Griffin*, 403 U.S. at 97-101, 91 S. Ct. at 1795-98, whether a private conspiracy falls within the scope of the statute depends entirely upon the nature of the right asserted. In other words, a conspiracy without state involvement may form the basis of a claim where the right at issue is enforceable against private as well as governmental interference, but state involvement is required where the right only prohibits state interference. *See Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991). Thus, as stated in *Volunteer Medical Clinic*:

> Our decisions in the area of state action have tracked closely the language of the [Supreme] Court, and have held that a claimant has a cause of action under the Fourteenth Amendment only where she can show a sufficiently close nexus between the state and private defendants such that the defendant may be deemed a state actor.

948 F.2d at 227 (citations omitted).

In *Griffin*, several black plaintiffs alleged that the defendants conspired to deprive them of various rights, including their rights to free speech; movement, association, and assembly; to petition the government; and not to be enslaved, by beating and intimidating them. The Court held that the alleged conspiracy among private individuals was actionable because the constitutionally protected right to travel and the right to be free from slavery under the Thirteenth Amendment may be asserted against both private and governmental interference. *Griffin*, 403 U.S. at 105-06, 91 S. Ct. at 1799-1800. Later, in *Scott*, the Court pointed out that conspiracies asserting a violation of rights arising under the Fourteenth Amendment require proof that the state was somehow involved in or affected by the conspiracy because such rights prohibit only state interference. *See Scott*, 463 U.S. at 831-33, 103 S. Ct. at 3357-59.

In the present case, Plaintiffs concede that the alleged conspiracy did not involve any state action. Although they do not dispute that the amended complaint alleges the violation of rights arising under the Fourteenth Amendment (for example, the rights of equal protection and liberty), Plaintiffs state that their amended complaint does not "limit their claim of constitutional deprivation solely to the 14th Amendment." (Pls.' Resp. Br. at 3.) However, Plaintiffs do not allege that Defendants violated their right to be free from involuntary servitude under the Thirteenth Amendment or their right to interstate travel. Importantly, these are the only two rights that the Supreme Court has identified as protecting against private as well as governmental interference. *See Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 219 (D. Mass. 1995) ("Thus far, the Supreme Court has identified only the right to be free from involuntary servitude under the Thirteenth Amendment and the right to interstate travel as rights protected against private as well as official encroachment."). Accordingly, dismissal is also proper on the grounds that Plaintiffs have failed to allege the necessary state involvement in the conspiracy.

*State Law Claim*

Having concluded that Plaintiffs' sole federal law claim should be dismissed, the Court must decide whether to exercise supplemental jurisdiction over Plaintiffs' state law claim. "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)). In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (affirming district court's order granting summary judgment on federal claim and dismissing state law claims without prejudice). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254-55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)). Given the early stage of this litigation, as well as Michigan's interest in interpreting and applying its own ethnic intimidation law, the Court concludes that this is an appropriate case to decline to exercise its supplemental jurisdiction.

### Conclusion

For the foregoing reasons, the Court will grant Defendants' motions to dismiss Plaintiffs' claim under 42 U.S.C. § 1985(3) and dismiss Plaintiffs' state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An Order consistent with this Opinion will be entered.

Dated: November 26, 2008            /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE